[No. 6318. Decided November 9, 1906.]

JOSHUA PEIRCE, *Respondent*, v. J. W. WHEELER, *Appellant*, TACOMA LAND AND IMPROVEMENT COMPANY, *Defendant*.[1]

TRIAL—FINDINGS OF FACT—SUFFICIENCY AND NECESSITY IN EQUITABLE ACTIONS. Findings of fact and conclusions of law may be stated upon the same page, if segregated, especially in an equitable action.

FRAUDS—STATUTE OF—SALE OF LANDS—MEMORANDUM—ORAL AUTHORITY TO SIGN—BROKERS—STATUTES—CONSTRUCTION. Laws 1905, p. 110, amending the statute of frauds and requiring a contract for the employment of a broker to be in writing, does not change the rule in this state that the authority of a broker to execute a written contract for the sale of lands need not be in writing.

SAME—MEMORANDUM OF SALE—DEFINITENESS—SPECIFIC PERFORMANCE. A broker's memorandum of sale of real estate which describes the lots, and states all the terms of payment, is sufficiently definite for specific enforcement.

SPECIFIC PERFORMANCE—DECREE—OBJECTIONS. It cannot be objected to a decree for the conveyance of all of defendant's interest in certain lots, that some of the lots had, by the defendant, been previously contracted to be sold to other persons not parties to the suit; as such interests are not affected by the decree.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered April 7, 1906, after a trial on

[1]Reported in 87 Pac. 361.

the merits before the court without a jury, decreeing the specific performance of a contract to convey real estate. Affirmed.

*Byers & Byers*, for appellant.

*T. L. Stiles*, for respondent.

HADLEY, J.—This is an action to enforce specific performance of a contract to sell real estate. The defendant Tacoma Land and Improvement Company was the owner of a certain eighty-acre tract of land, and it contracted in writing to sell the same to one Gregg for the consideration of $12,000, a part of which was to be paid in cash and the remainder by installment payments covering a period of four years. Thereafter, with the assent of said company, Gregg sold and assigned his interest in the said contract to the defendant Wheeler. Wheeler took possession of the land and caused it to be platted under the name of "Barker's Addition to the City of Tacoma." Thereafter Wheeler sold his interest in many of the lots within said addition, but the plaintiff alleges that, on the 19th day of February, 1906, he still retained the interest which the said contract gave him in three hundred and sixty-eight of the lots. It is also alleged that, on the said date, Wheeler employed one Gregory as his agent to procure a purchaser for said three hundred and sixty-eight lots, and to contract for the sale of the same to any purchaser whom he might find; that on said day Gregory offered to sell said lots to the plaintiff for the sum of $12,-000, of which sum $4,000 was to be paid in cash upon the passage of the necessary papers, and the balance according to the terms of the said Tacoma Land and Improvement Company contract, as the payments should become due thereunder; that the plaintiff accepted the offer, and that Gregory communicated the fact of the sale and the terms thereof to Wheeler, who assented thereto and directed Gregory to proceed and complete the sale; that plaintiff paid to Gregory

$500 as a part of said cash payment of $4,000, and that Gregory executed and delivered to plaintiff a contract in writing for the sale of the lots upon the terms mentioned; that all of said facts were communicated by Gregory to Wheeler, and that the latter assented thereto; that thereafter Wheeler refused to be bound by said contract, and refused either to execute a deed to plaintiff for the lots or to assign said Tacoma Land and Improvement Company contract; that plaintiff has offered to pay in the manner provided by the contract, and now brings into court the sum of $3,500, the balance of the cash payment, for the use of said Wheeler. Wheeler answered and denied generally the material allegations above stated. The cause was tried by the court without a jury, and resulted in a judgment requiring the defendant Wheeler to perform the contract. He has appealed from the judgment.

Appellant complains that the findings of fact and conclusions of law were not separately stated. It is true they appear upon the same page, but the conclusions of law are clearly segregated by separate statement and paragraph from the findings of facts. No one can be confused or misled by the findings and conclusions as stated, and appellant's rights were in no way prejudiced thereby. Moreover, this is an equitable action, and this court has held that the statute with relation to findings of facts does not apply to such actions. *White Crest Canning Co. v. Sims*, 30 Wash. 374, 70 Pac. 1003.

The evidence does not disclose any written authority from appellant to Gregory as his agent to sell the real estate in question, for which reason appellant contends that the contract which Gregory made with respondent cannot be enforced. This contention is based upon the statute of 1905 as found in chapter 58, page 110, of the Laws of that year. It will be observed that the statute is an amendment to Bal. Code, § 4576 (P. C. § 5543), relating to contracts and pro-

viding that certain contracts shall be void unless in writing. The pertinent part of the statute is as follows:

"In the following cases specified in this section, any agreement, contract, and promise shall be void, unless such agreement, contract, or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say; . . . 5. An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

We think it is manifest that the legislature intended to reach such contracts only as involve the relations of an owner and his agent with respect to the recovery of compensation or commission for services in selling or purchasing real estate. To hold that the statute was intended to require the authority of the agent to be in writing, so far as the rights of a vendor or purchaser who deals with the agent of another are concerned, would be to read into the statute something that is by no means either clearly or necessarily implied. The contract which the statute declares to be void unless in writing is one for the payment of a commission to the agent, but it does not say that the actual authority to sell or purchase must be in writing. California has a statute containing the exact words found in our own. Deering's Cal. Civil Code, § 1624, subd. 6. The California supreme court has recognized the force of the statute as applied to express contracts for the payment of commissions. *Mc-Carthy v. Loupe*, 62 Cal. 299; *Myres v. Surryhne*, 67 Cal. 657, 8 Pac. 523.

The above decisions are restricted to the one subject of the enforcement of contracts to pay commissions, and do not hold that the statute relates to the matter of an agent's actual authority to sell or purchase. That such could not have been the intention of the California statute is accentuated by the fact that the legislature of that state has passed another statute dealing directly with the authority of the agent which requires the authority to be in writing. Deer-

ing's Cal. Civil Code, § 1741. We do not appear to have such a statute in this state.

Appellant cites *Halsell v. Renfrow*, 14 Okl. 674, 78 Pac. 118, as supporting his contention that the agent's authority must be in writing. The opinion shows, however, that it is based upon a statute, and an examination of § 780, subd. 5, of Wilson's Revised and Annotated Statutes of Oklahoma, shows that the agent's authority is expressly required to be in writing and subscribed by the party sought to be charged. In *Carstens v. McReavy*, 1 Wash. 359, 25 Pac. 471, this court said:

"The statute of frauds may be satisfied by the execution of a contract for the sale of lands by the hand of another person than the party to be charged, if that person be thereunto lawfully authorized, and it is well settled that such third person may be thus lawfully authorized orally, by written direction not under seal, and, even by a course of conduct amounting to estoppel."

The above rule was approved in *Horr v. Hollis*, 20 Wash. 424, 55 Pac. 565, and in *Monfort v. McDonough*, 20 Wash. 710, 54 Pac. 1121. It was therefore established in this state before the passage of the act of 1905, that oral authority to an agent is sufficient for him to bind his principal when as such agent he signs a memorandum in writing, and that the principal is thereby charged. It is true the statute of frauds requires that a contract for the sale of lands to be enforcible must be in writing, and it must be signed by the party to be charged or by some other person thereunto by him lawfully authorized. That the authority of such other person to sign may, however, be in parol unless prohibited by express statute, this court has already held as shown above, and we hold that the act of 1905, invoked here, has not changed the rule in that regard.

It is urged that the evidence here neither shows authority in the agent to make the contract, nor a ratification of it by appellant. It is not disputed that appellant expressly authorized Gregory to find a purchaser for at least practically

all of the lots specified in the contract. Appellant claims that he reserved certain improved lots included in an enclosure wherein stood an office building, erected for the purpose of facilitating the sale of the lots in the addition. A local agent of appellant, who had been making miscellaneous retail sales of lots in the addition, also resided in the building. Gregory says, however, that this reservation was not made. Appellant also says that he expected Gregory to confer with the local agent as to lots already sold by him. It appears that the list which was used by Gregory was procured from the local agent, but it is claimed that the latter had contracted for the sale of some of the lots before the contract was made with respondent. The court found that the appellant authorized Gregory to find a purchaser for the unsold lots in the addition, and that there were then three hundred and sixty-eight unsold lots; that the price of the property was not then definitely fixed, but that Gregory was to fix a price and terms and get an offer; that he procured the offer from respondent alleged in the complaint, accepted it subject to confirmation by appellant, received $500 on account of the cash payment, and executed and delivered to respondent a written memorandum signed by himself; that he thereupon informed appellant of what he had done; that appellant approved the same, and that he then informed respondent of such approval, that thereafter, and before the commencement of this action, appellant refused to carry out the contract, either by deed for the lots or by assignment of the Tacoma Land and Improvement Company contract. We think there is sufficient evidence to sustain the findings, and that we should not disturb them.

It is also contended that the contract is too indefinite to be enforced. The essential part of the written memorandum reads as follows:

"Tacoma, Wash., 2-19, 1906.

"Received of Joshua Peirce Five Hundred no 100 Dollars Deposit on lots 368 lots in Barker's Add. to Tacoma, Wash.,

as per schedule delivered him 2-16-06. (Here follows description of the lots) Price $12,000.00 . . Dollars Terms $4,000.00 Cash, bal. as per contract with Tacoma Land Co., and provided no further payment within six months from date. Sold subject to approval of owner. "$500.00."

It will be observed that the contract fixes the entire purchase price at $12,000, and calls for a cash payment of $4,000 with balance as per contract with Tacoma Land Company, and with the further provision as follows: "Provided no further payment within six months from date." It thus appears that a balance of $8,000 was to be paid after the first cash- payment. It is conceded that appellant's interest in the property was created by the land company's contract, payments upon which were yet to be made, and it is manifest from the memorandum delivered to respondent that payment of the balance unpaid upon that contract was to constitute a part of the $12,000. The remaining payments upon the land company's contract were not yet due, and it is evident that respondent was to pay these as they became due. The memorandum concluded with the statement that no further payment was to be made within six months. The next payment upon the land company's contract matured, however, August 15, 1906, which was four days before the expiration of the six months from the date of the memorandum. It is apparent that that payment which was to be made "as per contract with Tacoma Land Co.," was required to be made before six months, and the concluding clause must therefore, by strict construction, be held to have referred to the payment of any additional part of the $12,000 not covered by the unpaid balance under the land company's contract. We think it is apparent that the parties were not at the time advised of the exact balance under the land company's contract; that they estimated it to be about $8,000; but that they intended to provide for its payment as it became due, and that any remaining part of the $12,000, if

any, should be ascertained and should be paid at the end of
six months. The complaint alleges that the balance upon
the land company's contract was $7,500, but the evidence
discloses that it was not so much. The full difference be-
tween $8,000 and the actual balance upon the land contract
was, however, payable six months from date of the memo-
randum. This suit was commenced and decree was entered
before that time, and respondent was not under obligation
to pay or tender the amount before bringing this suit. The
decree provides that appellant shall assign and transfer to
respondent all of his rights under the land company con-
tract, and that respondent shall assume the obligations of
appellant under the said contract. We think this is in ac-
cordance with the contract between the parties, the balance of
the first cash payment having been paid into court. Re-
spondent had made the payment required before the trans-
fer was to be made and was entitled to the transfer.
As to any balance that was to be paid appellant out-
side of the amount to the land company, we have seen that it
was not yet due, and its payment was a matter for the future.
Appellant claims that the amount is $800, but that matter is
not for our determination now. We simply find that the
contract was sufficiently definite for specific enforcement,
and that all payments that were due under it had been made
or tendered prior to the decree.

It is contended that the evidence shows that appellant's
local agent had contracted for the sale of seven, possibly
nine, of these lots before the contract was made with re-
spondent. Whatever may have been the fact in that regard,
we think the decree does not prejudice appellant's rights.
It calls only for the transfer from appellant to respondent
of "all of the rights" of appellant "under said contract." If
other persons had previously acquired from appellant rights
under the same contract, they are not affected by the decree.
If respondent does not get by the decree all for which his

contract calls, still if he is willing to accept the actual interest of appellant in the lots covered by the contract, appellant cannot complain.

The judgment is affirmed.

MOUNT, C. J., RUDKIN, DUNBAR, and CROW, JJ., concur.