[No. 6614.  Decided February 21, 1907.]

TOM R. ROBERTS, *Respondent*, v. THE HILTON LAND COMPANY, *Appellant*.[1]

FRAUDS, STATUTE OF—SALE OF LANDS—MEMORANDUM—ORAL AUTHORITY TO SIGN—BROKERS—STATUTES—CONSTRUCTION. Laws 1905, p. 110, amending the statute of frauds and requiring a contract for the employment of a broker to be in writing, does not change the rule in this state that the authority of a broker to execute a written contract for the sale of lands need not be in writing.

CORPORATIONS—REPRESENTATION OF OFFICERS—SOLE STOCKHOLDER. A corporation is bound by a sale of its land made by its president

[1]Reported in 88 Pac. 946.

as his individual property, where 98 per cent of the stock of the corporation, all but two shares held nominally by the secretary and attorney of the company, was held by the president, who was also general manager and fully authorized to sell any of its property, who was in sole charge of its business, and who mingled his personal funds with those of the corporation, making no distinction between his individual business and the business of the company.

BROKERS—AUTHORITY—RATIFICATION OF SALE. Although a broker is orally authorized only to find a purchaser for certain land, his written contract for its sale is ratified and binding on the owner, if he agrees to the sale upon being notified thereof and accepts earnest money paid thereon (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for King county, Rigg, J., entered June 4, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to enforce the specific performance of a contract to convey real estate. Affirmed.

*Wright & Kelleher,* for appellant.
*Granger & Magill,* for respondent.

DUNBAR, J.—The Haynes-Cowen Company were engaged in the real estate business in the city of Seattle. One John Hilton, a resident of the city of Everett, authorized them to sell the south fifty-four feet of lot 4 and the north six feet of lot 5 in block 289 of Seattle tide lands. Soon thereafter the brokers found a purchaser in the person of plaintiff, accepted from the plaintiff a deposit of $500, and gave him a receipt signed by them. They informed Mr. Hilton of the transaction which, he replied, was satisfactory, and received $250 out of the $500 which had been paid by the Haynes-Cowen Company. Refusing to carry out the terms of the contract, this action was brought by the purchaser to enforce specific performance.

The court found, that Hilton was the owner of ninety-eight out of one hundred shares of the capital stock of the corporation which actually owned the land in controversy;

that he had been in sole charge and control of the affairs
of said corporation; that he was the president and general
manager, fully and completely authorized to sell any of the
property of said corporation on such terms and at such
prices and to such parties as he deemed fit, and that he kept
and mingled his own personal funds with those of the cor-
poration; that the Hilton Land Company, acting through
Hilton, its authorized agent, directed the Haynes-Cowen
Company to sell the lands in controversy upon certain terms,
to wit: $6,000; $3,000 down, and $3,000 payable in one
year at seven per cent; the deed to be delivered on payment
of the first $3,000, and the last $3,000 to be evidenced by a
note secured by first mortgage on said property; the said
defendant, the Hilton Land Company, to furnish an abstract
of title to said premises; found that the Haynes-Cowen Com-
pany sold the premises in accordance with the instructions of
the defendant, and delivered to the plaintiff their certified
receipt or contract in writing, in words and figures as fol-
lows, to wit:

"Seattle, Sept. 28th, 1905.

"Rec'd of Tom R. Roberts five hundred ($500.00) dollars
acct purchase South 54 ft Lot 4 & North 6 ft Lot 5 Block
289 Seattle Tide Lands.  Price 6000.00 free from all taxes
& assessments.  Terms 500.00 down herewith & for which
this is receipt.

"$2500 cash in 15 days
"  3000 in one year 7 per cent int

"Total....$6000.

"Abstract & full warranty deed to be furnished.

"Haynes-Cowen Co., Agents."

and found that, at the same time and place, it was agreed
that the contract should be carried out as agreed upon be-
tween defendant and the Haynes-Cowen Company; that im-
mediately after said transaction, Haynes, by telephone com-
munication, notified Hilton that he had sold the property;
that he had received $500; also fully informed him as to the

terms of said sale; that said Hilton, in response, stated that the sale was all right and satisfactory to him; that on September 29, 1905, Haynes paid to Hilton of said $500 the sum of $250, and also received a receipt therefor; that said receipt was executed by said Hilton for and in behalf of the defendant corporation, and said money was so received by him; that said receipt was so executed with full knowledge of all the facts of the sale of said property by said Haynes as agent of the defendant, of the terms thereof, of the party to whom the sale had been made, and of the payment thereof of $500; that shortly afterwards the said defendant repudiated said contract of sale and refused to perform the same. The eighth finding of fact is in relation to a mistake made by the plaintiff in regard to the ownership of one-fifth of the property in dispute, which it is not necessary to discuss in this opinion. Conclusions of law were made, and judgment entered in favor of the plaintiff. From such judgment this appeal is taken.

The defendant excepts to the correctness of the material findings of fact and to the conclusions of law, and to the refusal of the court to make the findings proposed by the defendant. In our opinion the facts found are justified by the record, and the conclusions are properly deducible from such findings. The assignments of error are that the court erred in overruling the defendant's demurrer to the complaint; in overruling defendant's objection to the introduction of any evidence; error in admitting testimony, and in making certain findings of fact.

The assignment that the court erred in overruling the demurrer to the complaint and in overruling the defendant's objection to the introduction of any evidence, is based upon the act of 1905, Laws 1905, page 110, chapter 58. Under the provisions of this chapter it is contended that the contract of employment, not being in writing, the same was void. This question was settled against appellant's conten-

tion in *Peirce v. Wheeler*, 44 Wash. 326, 87 Pac. 361. Nor do we think there is any merit in appellant's contention that it was not responsible for the contracts made by Hilton. It is shown by the testimony, and conceded by the appellant, that Hilton was the owner of ninety-eight shares out of one hundred shares of the corporation; that one share was held . by L. B. Crosby, and one share by W. P. Bell, attorney for the company, Crosby being a nominal holder of stock, having no real interest in the company. He paid nothing for the stock, had nothing to do with the transaction except as secretary to sign the papers which Mr. Hilton required him to sign. The record shows that Hilton had no personal bank account, but that his personal money and money belonging to the Hilton Land Company were both deposited in the account of the Hilton Land Company, and his checks in his own personal business were drawn by him upon that bank account, and the money which he received as a payment on this transaction was deposited to the credit of the Hilton Land Company. Hilton made no distinction between his individual business and the business of the land company, and it does not make a particle of difference whether we consider the land as the property of Hilton or of the Hilton Land Company. In either event, it is the same land and the same owner, and the owner cannot escape responsibility by any such acts of legerdemain as are attempted by the appellant in this case. It will not be allowed to contract the land as Hilton's and then, when it rues the contract, plead the ownership of Hilton Land Company, and *vice versa.*

This same proposition was before this court in *Mitchell v. Lea Lumber Co.*, 43 Wash. 195, 86 Pac. 405, where two corporations, the stock of which was owned practically by the same individuals, attempted to defeat the right of the plaintiffs to recover, on the ground that they had sued the wrong corporation. In speaking of the claim, this court said:

"It is not material that the actual driving may have been done by another corporation than respondent. Such cor-

poration became no more than the agency through which the respondent made use of its license, and the latter should not, therefore, evade its responsibility."

The only serious question in this case is that of whether the Haynes-Cowen Company had authority to enter into a contract of sale for the land which had been placed in their hands for sale by the appellant, the contention of the appellant being that the authority only extended to finding a purchaser, and that the contract of sale would have to be made between the purchaser and the owner. And it is contended that this was squarely decided by this court in the case of *Carstens v. McReavy*, 1 Wash. 359, 25 Pac. 471, and such seems to have been the effect of that decision. We are not prepared to overrule the doctrine there announced, nor do we wish to extend it. In that case there was no element of estoppel by reason of the contract having been ratified in any manner whatever; it appearing that the contract was made for the defendant's property without his knowledge and in his absence from the state, and that when it came to his knowledge he refused to recognize the contract and denied the authority of the agents to sell. This case, it seems to us, falls more squarely within the rule subsequently announced by this court in the case of *Service v. Deming Investment Co.*, 20 Wash. 668, 56 Pac. 837, where, without noticing the case of *Carstens v. McReavy, supra*, the court held that, although the authority of an agent may be merely an oral authorization to find a purchaser for certain land, yet his written contract for its sale is binding on his principal when the principal subsequently ratifies the same by agreeing to the terms of the sale and accepting earnest money paid thereon. From a careful examination of that case, we are unable to distinguish it in principle from the case at bar. It is true that one of the acts of ratification in that case was the placing of the purchaser in possession; but there were other acts which seemingly, in the opinion of

the court, were as essential elements of ratification as that, namely, that the defendant was notified of the fact that a purchaser had been found, informed who the purchaser was, that the sum of $100 was paid by the purchaser under the express direction from the general manager of the defendant to the agent who received it; and not only that, but that he was directed to remit it, which was done, the court saying:

"Authority to execute the memorandum was, we think, fully conferred, if not in express words, certainly by the conduct of the defendant itself acting through its general manager; and his action was, we think, fully ratified, as appears from the subsequent letters and correspondence between the manager and Bradshaw. The price was agreed upon, the terms upon which it was to be paid were agreed upon, money was paid in pursuance of the agreement, and the party was let into possession. These are the elements and only essentials of a valid agreement to sell and convey."

With the exception of the possession, which was not a matter of value in this case as it was in the case cited above, the land in that case being farm land, the language of the court might well apply to the case at bar. Certainly in this case authority to execute the memorandum was fully conferred, if not in express words, by the conduct of the defendant acting through its general manager. He was notified of the sale and, while he says that he was not notified that a contract had been signed which would bind him, he must have known that a contract of sale had been made when he was informed that the agents had sold the land upon the exact terms which he had instructed them to sell it upon, and that a payment had been made which was tendered him and which he received. Then, in the language of the court in *Service v. Deming Investment Co., supra,* "the price was agreed upon, the terms upon which it was to be paid were agreed upon, money was paid in pursuance of the agreement." In this case no objection was made to the action of the agents. They were instructed by Hilton that it was

satisfactory, and that he would prepare an abstract of title. The evidence shows that he did prepare the abstract of title, took it to the office of the agents at Seattle, and while conversing with one of the agents about the matter, some difficulty arose between them, and Hilton, retiring with his abstract, refused to comply with the contract. The cause of the disagreement was a matter, of course, which could not possibly affect the interests of the purchaser.

Under all the circumstances of this case, we think the judgment of the court was proper and just, and should be affirmed.

HADLEY, C. J., ROOT, MOUNT, and CROW, JJ., concur.

FULLERTON, J. (dissenting)—I dissent. Contrary to what might be inferred from reading the principal opinion, the trial court did not enforce a specific performance of the contract as it was originally made, but it found that neither Hilton nor the Hilton Land Company owned more than a five-sixths interest in the land in question, and it directed a specific performance as to the five-sixths interest only, making a corresponding reduction in the purchase price. When it is remembered that the contract was not originally the contract of either the appellant or Hilton, but is binding upon them only in case they subsequently ratified it, it seems to me that this circumstance alone shows the conclusion reached by the majority to be erroneous. But that there was no ratification is shown by another fact appearing in the record. When the agent talked with Hilton over the telephone he did not even inform him that he had entered into a written contract with the intending purchaser, much less did he inform him that he had entered into a written contract agreeing to convey to the purchaser the whole of the land described, that part to which the appellant had no title as well as the other; he simply informed him that he had sold the property at a stated price on certain terms, which the appellant had a right

to understand, and must have understood, to mean that he had procured a purchaser who was willing to take the property on those terms. A ratification to be binding must be made with a full knowledge of all of the facts. As was said by the supreme court of the United States in *Owings v. Hull*, 9 Pet. 607, 9 L. Ed. 497, "No doctrine is better settled, both upon principle and authority, than this; that the ratification of an act of an agent previously authorized, must, in order to bind the principal, be with full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded in mistake or fraud." Here the facts were suppressed by the agent, and, whether wilfully or innocently, the appellant ought not to be held bound since he did not have knowledge of all the material facts when he committed the acts thought to amount to a ratification.

Nor do I think the case of *Service v. Deming Investment Co.*, 20 Wash. 668, 56 Pac. 857, in any way supports the judgment in this case. In that case the authority to execute the contract of sale consisted of something more than merely putting the property in the hands of a real estate agent for sale. An examination of the opinion will disclose the fact that, before the execution of the contract of sale, the agent, in the presence of the purchaser, called up by telephone the representative of the owner who had authority to sell the property, stated the terms and conditions of the sale to him, and received his direct assent to the terms, and that these terms were then reduced to writing in the form of a letter and forwarded the representative, and his reply received in writing approving the terms, before any memorandum of the sale was given the purchaser; and further, that at the time of the execution of the memorandum a part of the purchase price was paid and the purchaser put into possession. It was these facts the court was referring to when it made the statement quoted in the majority opinion. I submit that

this presents a different record than is presented in the case at bar.     Here, unless the principle announced in *Carstens v. McReavy*, 1 Wash. 369, 25 Pac. 471, is to be overruled, there was no previous authorization to execute the contract sued upon, and its validity must rest entirely upon a subsequent ratification.     True the majority do say that "authority to execute the memorandum was fully conferred, if not in express words, by the conduct of the defendant acting through its general manager," but in the recital made from the finding of the trial court set out earlier in the opinion, it clearly appears that the partial payment received by the agent, and the execution of the contract sued upon, preceded the telephone communication of the facts of the sale by the agent to Hilton, so that the previous authorization was nothing more than is usually granted a real estate agent; which, under the rule of *Carstens v. McReavy*, was the right to procure a purchaser only, not the right to enter into a contract for the sale of the lands.

The majority, however, while saying that they are not prepared to overrule the doctrine announced in the case of *Carstens v. McReavy*, do say that they do not wish to extend it.     I regret that they have even felt themselves compelled to cast a doubt upon the correctness of the rule.     From the opinion it might be inferred that this was the first time the court had found it necessary to reexamine that decision and apply the principle therein announced, but such is not the fact.     The case on this precise point was affirmed in *Scully v. Book*, 3 Wash. 182, 28 Pac. 556, and the principle applied to agents other than those engaged in the real estate business.     It was again affirmed in *Armstrong v. Oakley*, 23 Wash. 122, 62 Pac. 499.     In that case it was said that ever since the case of *Carstens v. McReavy* it had been the settled law of this state that authority granted to an agent to sell real estate did not give authority to enter into a contract for its conveyance.     In *Samson v. Beale*, 27 Wash. 557, 68

Pac. 180, this language was repeated with approval, and it was again stated that the mere employment of a real estate agent to sell property, authorized him to do no more than find a purchaser for the property. And finally the doctrine was approved in the recent case of *Monk v. Duell,* 41 Wash. 403, 83 Pac. 313. Nor was the doctrine modified by the case of *Service v. Deming Investment Co.* That case was decided, as I have shown, solely on the principle that there was a previous authorization and subsequent ratification of the agent's contract, and the case of *Carstens v. McReavy,* was not noticed because it was not thought to have any bearing upon the questions involved. There is, therefore, an unbroken line of decisions, reaching from the organization of the court down to the present time, holding that the employment of a real estate agent to find a purchaser for a tract of land does not authorize the agent to enter into a contract for its sale, and it would seem that if repeated judicial decisions could settle a question this one was settled to its fullest extent.

But without discussing the question further, as I view the record, there was no previous authorization nor subsequent ratification of the contract, and the appellant's acts amounted to nothing more than an oral agreement to convey on the receipt of a part of the purchase price, and this we held in *Chamberlain v. Abrams,* 36 Wash. 587, 79 Pac. 204, where the question was squarely before us, was not sufficient to take the case out of the statute of frauds. The judgment appealed from should be reversed.