[No. 7962.  Department One:  June 26, 1909.]

GEORGE LAWLER, *Appellant*, v. J. ARMSTRONG *et al.*,
*Respondents.*[1]

BROKERS—AUTHORITY—RATIFICATION.  A broker is the agent of
the vendors where it appears that he approached them advising
that he had a prospective purchaser, that they agreed to pay a
commission in case of a sale, and that the broker signed a contract
as "agent for the owner," which was approved in writing by the
owners, thereby ratifying the agency.

BROKERS—RIGHT TO COMMISSIONS—CONSUMMATION OF SALE.  Un-
der an agreement to pay a broker commissions on a cash sale, "in
case sale is consummated, or. one-third of earnest money in case
same is forfeited," the broker is entitled to recover commissions,
where, after a sale to a responsible party, who refused to consum-
mate it, the vendors elected to sue for specific performance, recov-
ered a collectible judgment for the price, and compromised the same
on a slight reduction, without the consent of the broker; as the sale
was thereby consummated.

[1]Reported in 102 Pac. 775.

SAME—DUTY OF BROKER—FAILURE TO DISCLOSE. Failure of a broker to disclose that the purchaser was acting as agent for an undisclosed principal is not a defense to an action for commissions, where the ostensible purchaser was responsible and the vendors were not injured.

SAME—CONTRACT TO DIVIDE. An undisclosed agreement by a broker to divide his commissions with the purchaser is no defense to an action against the vendors for the commissions, where they were not injured thereby.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered December 23, 1908, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to recover a broker's commission. Reversed.

*Ellis, Fletcher & Evans*, for appellant.

*Burkey, O'Brien & Burkey*, for respondents.

Gose, J.—The appellant, a real estate broker, instituted this action for the purpose of recovering a stipulated commission from the respondents upon a written contract for the sale of real estate. The applicable part of the contract is in the following language:

"Received of R. D. McDonald, purchaser, the sum of five hundred ($500) dollars as earnest money and in part payment for the purchase of lots 18 and 19, block 1906, Jefferson Street Addition to the City of Tacoma, Washington, with the buildings and improvements thereon, which we have this day sold to said purchaser, subject, however, to conditions named in this contract, for the sum of thirty thousand ($30,000) dollars on the following terms: $500 cash herewith. $29,500 cash within ten days after delivery of abstract showing clear title. . . .

"It is agreed that if the title to said premises is not good, or cannot be made good within 30 days from date . . . this agreement is void and the earnest money shall be refunded. But if the title to said premises is good, . . . and the property is not taken by the said purchaser within five days after written notice is mailed to his address, the earnest money shall be forfeited to George Lawler. The

above forfeiture shall in no way impair the right of·either party to enforce the specific performance of this contract.

"George Lawler,"

"Agent for the Owner or Seller."

"By George Lawler."

"I hereby agree to purchase said property on the above terms, and pay $30,000 as specified above.

"R. D. McDonald, Purchaser,

"Address, 1301 Pacific Ave.

"Tacoma, Sept. 19th, 1907.

"We approve the above sale and agree to pay George Lawler $750 in case sale is consummated or 1-3 of earnest money in case same is forfeited, and covenant that we are the owners of the above described property in fee simple.

"J. Armstrong,"

"P. F. Hylebos."

The complaint charged, and the evidence established, that the appellant received from the purchaser $500 earnest money, and paid the same to the respondents; that upon the failure of McDonald to accept the title and pay the respondents the $29,500, as required by the contract, they commenced an action against him for specific performance, and recovered a judgment therein for such sum, with interest thereon at the rate of six per cent per annum from the 21st day of October, 1907, such judgment providing that all the interest of both the plaintiff and the defendants in the property described in the contract should be sold under a writ of execution; that the proceeds of such sale should be applied on the judgment, and that execution should also run and be enforced against the property of the defendants. The complaint further avers, that McDonald had ample property to satisfy the judgment at the time of its rendition; that the defendants settled the judgment with McDonald, and that the sale had been fully consummated. The case was tried to the court, terminating in a judgment for the defendants. An appeal was taken from such judgment.

It satisfactorily appears from the evidence that McDonald, a shoe merchant, at the instance of one Henry Mohr, ap-

proached the appellant with a view to buying property suit-
able for the accommodation of a wholesale business. There-
upon the appellant called upon the respondents, and advised
them that he had a prospective customer for their property.
After some conversation about the matter, the respondents
said to him that they wanted to make a cash sale of the
property for $30,000. The appellant replied that, if the
sale was for cash, the respondents would be required to pay
the commission. It was finally arranged that the respondents
would pay the commission stated in the contract on a cash
transaction. The appellant then renewed negotiations with
McDonald, who then advised him that he was buying for an-
other party, but did not disclose the name of his principal.
Upon receiving this information, the appellant, of his own
volition, said to McDonald that he would allow him one-half
of his commission. The contract heretofore quoted was
then executed by the several parties. The evidence fails to
show that the appellant knew the name of McDonald's prin-
cipal at the time the contract was signed. The appellant
testified that McDonald's statement was that others were in-
terested with him in the transaction. The evidence shows con-
clusively that there was no engagement upon the part of
any one other than the respondents to pay a commission to
either McDonald or the appellant. The service of McDonald
to his principal Mohr was a gratuitous one.

Subsequent to the rendition of the judgment, the "Home
Land & Improvement Company," through Henry Mohr, its
president, took the property and settled the judgment by
paying $12,000 cash and engaging to pay the respondents
$18,000 with six per cent interest in deferred payments. The
respondents, by the terms of the settlement, retained the $500
earnest money in lieu of accrued interest, rebating the bal-
ance of the interest amounting to about $600. The settle-
ment was made and the judgment satisfied without the advice
or consent of the appellant. The evidence shows that the
judgment could have been collected in full from McDonald.

After the respondents commenced their action against McDonald and before trial, they knew that Henry Mohr was the principal in the transaction and that McDonald had purchased the property for him and at his request, but took no steps to establish his liability as an undisclosed principal. The evidence also shows that McDonald was a married man, and that the larger part of his property, and perhaps all of it, belonged to the community. We have stated the substance of the testimony as to the oral contract for the payment of the commission, for the reason that the respondents asked to have the written contract reformed so as to show that the payment of a commission was upon a cash transaction only. The parties are in substantial accord as to what the oral contract was, and, in our opinion, it did not differ from the written one.

The respondents urge six reasons which they assert require an affirmance of the judgment: (1) That the appellant was the agent of McDonald and not the agent of the respondents; (2) the appellant was not entitled to a commission except upon the consummation of a sale for cash; (3) the sale was not consummated; (4) the appellant did not produce a purchaser ready, able, and willing to buy on the terms agreed upon by the respondents; (5) the failure of the appellant to disclose the fact that McDonald was not the actual purchaser precludes a recovery; (6) the arrangement of the appellant to divide his commission with McDonald deprives him of the right to recover.

If the respondents' first contention, that the appellant was not their agent, is well founded, then their points 5 and 6 must fail. Confessedly, if the appellant was not their agent but was the agent of McDonald, he owed them no duty as to advising them as to whom McDonald represented, nor did the agreement to divide his commission concern them. The duty of good faith to them could only arise out of some relation of trust or confidence.

We will first consider whether the appellant was the agent

of the respondents in procuring the execution of the contract. The testimony of the respondents conclusively shows that, in the first conversation they had with the appellant, he advised them that he had a prospective purchaser for their property. They understood that, if the sale was made for cash, they would be required to pay the commission. We quote from the testimony of the respondent Hylebos: "Dr. Armstrong, his co-respondent, said: 'If we give it to the agent .we will have to pay a commission.'"

Moreover, the contract of sale was executed by the appellant on behalf of the respondents as "agent for the owner or seller." The respondents thereupon in writing "approved the above sale." If any weight is to be ascribed to the use of these words, the conclusion is inevitable that the respondents ratified the agency which the appellant at least assumed in signing the contract. It is elementary that agency may be created by written or spoken words or by the conduct of the parties. The appellant's authority to act as agent for the respondents was created both by conduct and by apt written words. When the respondents approved his sale, they ratified his agency. *Roberts v. Hilton Land Co.*, 45 Wash. 464, 88 Pac. 946; *Service v. Deming Inv. Co.*, 20 Wash. 668, 56 Pac. 837. However, the fact of his agency would not affect his right to recover in this case, as such right is predicated upon the contract which we have quoted.

We will next consider the respondents' 2d, 3d and 4th propositions together. The contract provided that $29,500 should be paid within ten days after delivery of an abstract showing title. We quote again from the part of the contract touching the respondents' liability:

"We approve the above sale and agree to pay George Lawler $750 in case sale is consummated, or one-third of earnest money in case same is forfeited."

The contract shows that $500 had been paid, and the evidence is uncontradicted that the appellant had paid that sum as earnest money to the respondents. Upon the failure of

McDonald to pay the unpaid purchase price and accept the title, either of two courses was available to the respondents; (1) to forfeit the $500 earnest money, retain two-thirds and pay one-third to the appellant; or (2) to sue for specific performance. They chose the latter. Upon the plainest principles of justice they cannot avail themselves of the appellant's labor and his customer to make a sale of their property, and then deny his right to recover because the purchaser did not voluntarily pay the cash. It is true that the contract called for a consummated sale for cash before the right to a commission arose, but it is likewise true that the appellant had an equity in the contract and a one-third interest in the earnest money, subject to the right in the respondents to enforce the contract or forfeit the earnest money. Manifestly they cannot enforce specific performance of the contract, obtain a collectible judgment, compromise it at a small loss without the advice or consent of the appellant, and then claim immunity from liability. None of the cases cited are exactly in point, but there is ample authority which in principle supports the view we have announced. As we view the case, it presents the simple question of ratification or waiver, and from either standpoint the respondents' liability is complete. In contemplation of law, when the respondents elected to compel the specific performance of the contract and obtained an enforcible judgment, the contract became consummated. It is urged that the judgment was not collectible from the community property of McDonald and wife, because McDonald in fact was acting as agent for an undisclosed principal. Surely, when he contracted for property as a principal, the community could not be heard to deny liability upon such a ground.

In *Norman v. Hopper*, 38 Wash. 415, 80 Pac. 551, speaking to the question as to when a broker's right to a commission accrues, at page 420, it is said:

"He further suggests that the agreement was to find a cash purchaser, but if the appellants assented to the terms proposed, it was the equivalent of cash."

In *Norris v. Byrne*, 38 Wash. 592, 80 Pac. 808, the broker had procured a customer ready, able, and willing to buy at a price agreeable to the owner. The broker, at the instance of the customer, endeavored to get a few days' time for the purchaser to make arrangements to close the transaction. The owner refused to acquiesce in the time limit; whereupon the broker sent the customer to the principal. The negotiations between the principal and the purchaser resulted in an arrangement whereby the latter was given time in which to make the payment. The trade was thereafter closed between the principal and the purchaser. Speaking to the liability of the principal, the court, at page 598, said:

"Respondents having reaped the benefit of appellant's information and services in the matter, are not in a position to deny liability for the commission asked."

In *Goss v. Broom*, 31 Minn. 484, 18 N. W. 290, the broker sued for the recovery of a stipulated commission. His engagement with his principal was to find a purchaser for the property on the basis of $8,000, $3,000 cash, $5,000 in three years. The broker found a purchaser who agreed to buy on the terms stated. No money was paid to the broker, but the purchaser gave him his check for $100. The defendant was informed of the contract of sale the day it was made, and on the following day the principal sold the property to another party. The principal claimed an immunity from liability because the broker did not procure the payment of money. The court, speaking to this question, said:

"The appellant claims that the agent did not comply with the conditions imposed upon him in that he did not procure the payment of any *money* from Paulson. It does not appear that it was the plaintiff's duty, in exercising the authority conferred, to procure the payment of any money. He became entitled to the stipulated compensation when he had done all that he was empowered to do. This he did by negotiating a sale and making a contract binding the purchaser to a performance of the terms prescribed. The power of the agent extended no further."

From the syllabus in *Goss v. Stevens*, 32 Minn. 472, 21 N. W. 549, we excerpt the following:

"One authorized as agent to sell land, but without power to convey, who has procured a purchaser, and bound him by contract to purchase the land upon the terms prescribed by the principal, or upon such modified terms as the principal has elected to accept and ratify, has performed his duty, and is entitled to the stipulated commission."

"Yet it is equally well settled that, if the principal ratify the contract made by the agent, the substituted terms become a part of the original agreement, and can be enforced as such." *Gelatt v. Ridge*, 117 Mo. 553, 23 S. W. 882, 38 Am. St. 683.

In *Henninger v. Burch*, 90 Minn. 43, 95 N. W. 578, it was held that a complaint which charged that the property owner agreed to pay a broker a commission of $100 to secure a purchaser for certain property at the price of $1,900, and that the owner sold the property to the broker's customer for $1,850, knowing him to be such, stated a cause of action for the recovery of the commission.

Passing to the consideration of point 5, we find that the rule is well settled that the broker must act with entire good faith towards his principal, and must disclose to the principal all facts within his knowledge which are material to the matter in which he is employed. In the instant case, the only fact which the appellant failed to communicate was that McDonald was acting as agent for an undisclosed principal, or, as appellant states, that other parties were interested in the purchase. In view of the fact that the testimony shows that McDonald was financially able to carry out his contract, it is evident that the respondents were not injured. The rule for which the respondents contend is applicable when there is either actual or constructive fraud. If the evidence indicated that the appellant had knowingly induced the respondents to enter into a contract with an impecunious purchaser, and that he had knowingly withheld from them the name of an actual purchaser pecuniarily able to complete the

contract, or if any other circumstance of fraud was present, we would hasten to afford them relief. No such facts or circumstances appear in the record. The point is therefore not well taken. *Bertelson v. Hoffman*, 35 Wash. 459, 77 Pac. 801; *Veasey v. Carson*, 177 Mass. 117, 58 N. E. 177, 53 L. R. A. 241; *Gelatt v. Ridge, supra; Glover v. Layton*, 145 Ill. 92, 34 N. E. 53.

Passing to the respondents' final contention, the record does not disclose that they were injured by the agreement of the appellant to divide commission with McDonald, and such fact therefore does not militate against his right to recover. *Scott v. Lloyd*, 19 Colo. 401, 35 Pac. 733; *Chase v. Veal*, 83 Tex. 333, 18 S. W. 597; *Boyd v. Watson*, 101 Iowa 214, 70 N. W. 120; *Henninger v. Burch, supra.*

The judgment will be reversed, with directions to the trial court to enter a judgment for the appellant as prayed for in his complaint. The appellant will recover his costs.

RUDKIN, C. J., FULLERTON, and MORRIS, JJ., concur.