**WARREN E. RICHARDS CO., Appellee, v GLASER, ET, Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6661. Decided October 21st, 1946.

**OPINION**

By ROSS, J.

Rehearing was granted appellants upon their assignment of error in which claim is made (1) that the trial court erred when it refused to answer certain specific questions contained in a questionnaire filed with the Clerk of the Court on February 16, 1946; the request for separate findings of fact and law having been made at the trial on February 13, 1946, and the court making its findings of fact and conclusions of law February 23, 1946; and (2) that the trial court erred in striking such questionnaire from the files.

In view of this action by this Court all of that portion of the opinion upon the first hearing dealing with this assignment, commencing on page 15 and ending with page 17 and paragraph 12 of the syllabus is deleted from such opinions and syllabus, and the conclusion of this Court expressed herein upon such assignment and syllabus is substituted therefor.

As indicated in the memorandum granting a rehearing upon this assignment of error, No. 6, certain specific problems are presented upon which this court now rules.

(1) Is the trial court required to answer the questionnaire in addition to making separate findings of fact and conclusions of law?

"It is the duty of the court as a part of its judgment to make answer to all interrogatories involving the ultimate facts of the controversy and to all involving probative facts from which the ultimate facts can be inferred as a matter of law, and its failure to do so is reversible error." **Cleveland Produce Co. v Dennert, 104 Oh St 149, 154.**

Such questions may be propounded either co-incidental with the request for separate findings or before or after such

request for separate findings is made. **Floyd v Light & Heat Co., 111 Oh St 57, 66; Bittman v Bittman, 129 Oh St 123; Levick v Bonnell, 137 Oh St 453, 456.**

In the instant case the questionnaire was filed with the Clerk of the Court prior to the date upon which the Court made its separate findings of fact and conclusions of law, so that if such separate findings include answers to the questions propounded to the Court, the trial court has complied with the requirement that it answer such questions.

It is also apparent that the trial court was aware of such questionnaire before it entered final judgment for it struck such questionnaire from the files before final judgment was filed for journalization.

Was the trial court required to answer the particular questions submitted, and did it do so?

Question No. 1 does not involve either an ultimate or probative fact, but a matter which the record of the trial would disclose.

When a real estate broker enters into a contract with the owner of real estate, agreeing to procure a purchaser therefor for a stated commission, in order that such broker may recover such commission in an action against the owner for breach of such contract, it is necessary that the broker allege and prove that he procured a purchaser, ready, able, and willing to pay the stipulated purchase price and perform the other terms of the sale and that he tendered the contract of such purchaser to the owner and that the owner refused to accept such purchaser. **6 O. Jur., p. 216. Wigmore Co. v Chapman, 113 Oh St 682.**

If and when the owner accepts such purchaser so presented by such broker, the owner, in the absence of appropriate reservations or guaranty by such broker, may not thereafter refuse to pay the broker's commission, because the tendered purchaser so accepted is later found to be financially unable to perform the contract of purchase and pay the purchase price. **Cleveland Produce Co. v Dennert, 104 Oh St 149.**

In view of these principles of law, it is apparent that an owner accepts a tendered purchaser at the peril of being required to pay a commission upon a sale, he is unable to enforce by reason of the financial inability of the tendered and accepted purchaser to pay.

In the absence of a guaranty by the broker or an agreement with the broker that the commission is to be paid out of the purchase price when paid by the purchaser, the owner must determine the financial responsibility of the tendered purchaser when presented, or as an alternative rely upon the

inability of the broker to prove such financial responsibility when he is sued by the broker for a commission.

The financial status of the purchaser at the time he is tendered by the broker, however, cannot be considered as wholly determinative of the question of performance by the broker under his contract with the owner, to produce a purchaser able to perform the contract of purchase.

The ultimate fact involved in this element of the broker's cause of action is that the tendered purchaser is financially able to perform the contract of purchase.

The evidentiary or probative facts, of course, will widely vary according to the financial status of the tendered purchaser. If the tendered purchaser at the time the offer to sell·is accepted is required to be then financially able to pay the purchase price and otherwise perform the contract of purchase, it can be readily seen that few sales would be consummated. In many such transactions the purchaser. is able to pay at least a portion of the purchase price only by a loan, made upon the property purchased, co-incidental with the transfer of title to him by the owner. On the other hand, it must be apparent also that his general financial status at the time the offer was accepted by the purchaser would be a proper subject of inquiry.

Under such considerations, and the finding of the court and the evidence, then the remaining questions are examined.

The trial court found "that the contract (Exhibit 2) presented to the defendants by the plaintiff was **presented** by a purchaser, ready, willing and able to complete the deal." (Emphasis added) The contract between the owner and broker provided that sale was to be for "cash." The offer of purchase also provided for "cash" payment and "Financial arrangements subject to O. P. A., to be settled by Feb. 1, '46." The offer was dated December 11, 1945.

Question No. 2. "Did the witness Mrs. Calvin have $13,-500.00 in cash in hand on the day her offer to purchase the defendants' property?"

It is true that if this question had been answered in the affirmative by the court, a probative fact would have been shown to exist upon which the ultimate fact of ability to perform found by the Court would be logically predicated. However, any questionnaire propounded to a court must be considered in the light of the evidence submitted in the case. Certainly, such would be the case in questions propounded to a jury. There appears to be no reason for applying a different rule when questions are propounded to the court. The purchaser testified that she had the amount of the purchase price

in bank at the time the offer was made and had other assets of an equal amount, and that she had not made, nor was it necessary for her to make arrangements for a loan to cover the purchase price. This was the only evidence upon this question. It was undisputed. The question, therefore, merely amounted to an inquiry to the court whether it believed this witness. A question merely designed to test the credibility of a witness does not fall within the category of those authorized by the rule.

Question No. 3. "If finding No. 2 is in the affirmative where did the witness Mrs. Calvin have the money?"

The answer to this question would be immaterial.

Question No. 4. "How much money did the witness Mrs. Calvin have on deposit in a financial institution or institutions on the day her offer to purchase defendants' property was made?"

Where the purchaser had the money would be immaterial. In addition, the only evidence submitted was that she had it in a designated bank.

Question No. 5. "How much money did the witness Mrs. Calvin have in her personal possession on the day her offer to purchase defendants' property was made?"

The answer to this question would be immaterial. Even under a liberal construction of the right to propound questions, the questionnaire may not amount to a cross-examination of the court upon its findings of ultimate facts. There was no evidence that the purchaser had any money in her personal possession.

Question No. 6. "If Finding No. 2 is in the negative does the evidence show that the witness Mrs. Calvin had actually made arrangements to borrow enough money to enable her to pay the purchase price of $13,500.00 at the time she made her offer to purchase defendants' property?"

The answer to this question also is immaterial. The bill of exceptions, as before stated, develops that the only witness upon the financial status of the tendered purchaser was such purchaser; that she testified she had at the time the offer was made the amount of the purchase price in bank and other assets to the same amount, and that it would be unnecessary for her to make arrangements for a loan, and that she had made none. There was, therefore, no evidence upon which Question No. 6 could be based. There was no conflict in the evidence. The question, again, therefore, is merely designed to and has the effect of testing the credibility of the only witness upon the subject.

Question No. 7. "If finding Number 6 is in the negative does the evidence show that the witness Mrs. Calvin, if and after her offer to purchase defendants' property was accepted by the defendants intended to make some arrangements probably with a financial institution or some third person to borrow enough money so as to enable her to pay the defendants the purchase price set forth in her offer?"

There is no evidence in the bill of exceptions sustaining the right to propound this question.

Question No. 8. "If Finding No. 6 is in the affirmative with whom does the evidence show such arrangements had been made?"

There is no evidence sustaining this question.

Question No. 9. "Does the evidence show that Mrs. Calvin at the time she made and signed her offer to purchase the defendants' property for $13,500.00 cash could have completed said purchase for said sum without thereafter making some arrangements either to borrow the necessary money from some third person or corporation or using the proceeds she might realize from the sale to some third person of the real estate which she owned at the time she made her offer to purchase denfendants' property?"

Question No. 10. "Was the witness Mrs. Calvin's ability to purchase the defendants' property in accordance with her offer contingent upon her making arrangements after her offer was accepted to raise all or part of the purchase price through the sale to third person of other real estate owned by her or through loans from third persons on real estate owned by her or on the real estate which she had offered to purchase from the defendants?"

These questions again have no relation to the evidence. There was no dispute as to the facts of the ability of the purchaser to pay. The questions, therefore, were merely left-handed attempts to ascertain whether the court believed the only witness who testified. The evidence fully sustains the ultimate fact found by the Court. The probative facts testified to by the witness are undisputed. In such case, questions directed to such probative facts can only raise questions of credibility and are improper. The court evidently believed the witness in reaching its finding upon ultimate fact and inferentially answered the question reaching only credibility, as there was no conflict in the evidence upon such probative facts.

There appears to be no justification for striking such questionnaire from the files even if some of the questions

were improper, and others were answered elsewhere. However, it does not appear in view of what has been said that the appellants were prejudiced by such erroneous action.

The final conclusion of the court reached upon the hearing is not disturbed, and the judgment is affirmed.

HILDEBRANT, PJ, and ROSS, J, concur in Syllabus, Opinion and Judgment.

MATTHEWS, J, concurs in Judgment.