HARLEY E. ROUDA & COMPANY, APPELLEE, *v.* SPRINGTIME COMPANY, APPELLANT; ALUMNI FUND, INC., APPELLEE.*

(No. 75AP-248—Decided December 31, 1975.)

Mr. *Bruno E. Voltolini,* for appellee Harley E. Rouda & Co.

*Messrs. Vorys, Sater, Seymour & Pease* and Mr. *Michael G. Long,* for appellant Springtime Co.

Mr. *Joseph S. Gill,* for third party defendant Jeffrey Heckman.

REILLY, J. This is an appeal by defendant Springtime Company, from a judgment rendered by the Franklin County Municipal Court awarding plaintiff, Harley E. Rouda & Co., $4,200 as a real estate commission for a sale of commercial property situated at 1852-1858 Summit Street, Columbus, Ohio.

The case was tried to the court without a jury. Subse-

quently, the court made the following findings of fact and conclusions of law:

"On March 24, 1972, the defendant, Alumni Fund, Inc., and the third party defendant, Jeffrey Heckman, entered into an agreement for Mr. Heckman to purchase property owned by Alumni Fund, Inc., for the sum of $70,000.00 This contract was arranged through the services of plaintiff, Harley E. Rouda & Co., Realtors. In the real estate purchase Contract, signed by all the parties, Alumni Fund, Inc., agreed to pay plaintiff its regular commission of six percent, for securing the purchaser for the property, 'when and if property is closed and seller receives cash'. The quoted words were added to the purchase contract at the insistence of Alumni Fund. Heckman deposited with plaintiff the sum of $3,000.00 at the time of the signing of the contract. The plaintiff was not present at the closing of the transaction.

"The contract was later assigned by Alumni Fund, Inc., to the Springtime Company. Mike Karr is the President and managing officer of both Alumni Fund, Inc., and the Springtime Company.

"Problems developed in closing the transaction and Springtime Company filed suit against Heckman in the Common Pleas Court of Franklin County, Ohio, asking for specific performance of the contract. The $3,000.00 deposited by Heckman with plaintiff was ordered paid into the Common Pleas Court, and was later dispersed to Springtime Company, to be credited to the contract price, after Heckman was ordered to specifically perform the contract.

"The contract was finally closed on November 17, 1972, at which time Heckman made an additional cash payment to Springtime Company of $8,043.00.

"The real estate purchase contract provided seller was to make available financing to buyer, which would make the total amount owed seller by buyer $127,000.00. The contract further provided that buyer agreed to pay the real estate brokers commission if he failed to fulfill his obligations under the contract within a reasonable time.

"The buyer did fail to fulfill his obligations under the

contract within a reasonable time. Seller elected to sue for specific performance of the contract rather than sue for breach of the contract.

"Conclusions Of Law

"Plaintiff is entitled to its real estate commission.

"Defendant Springtime Company by forcing defendant Heckman to specifically perform the contract, relieved defendant Heckman of his obligations to plaintiff. Defendant Heckman's Motion to Dismiss him as a third party defendant should therefore be sustained.

"The provision for payment of the real estate commission 'when and if property is closed and seller receives cash', is an ambiguous one. The only reasonable construction which can be given to the provision, considering the facts existing at the time the contract was signed, is that seller agreed to pay plaintiff its brokers commission whenever the contract was closed and seller received sufficient cash from the buyer to pay the commission.

"The seller having received more than enough cash to pay the brokers commission, it is therefore liable therefore (sic).

"Plaintiff is entitled to a judgment against the defendant, Springtime Company, in the sum of $4,200.00 plus its costs herein.

"Counsel for plaintiff will prepare a judgment entry consistent with this conclusion of law."

Whereupon, this appeal was perfected. The following are assigned as errors:

"1. In rendering judgment in favor of plaintiff-appellee, Harley E. Rouda & Co., against defendant and third-party plaintiff-appellant, Springtime Company, the trial court erred in holding that Harley E. Rouda & Co. is entitled to a real estate commission because by the terms of the real estate purchase agreement in question the seller changed the usual nature of a broker's duties under such an agreement and imposed upon the broker herein a duty to secure a ready, willing and able purchaser at the time of closing, as opposed to the time of signing an agreement to purchase, which duty the broker herein failed to perform.

"2. The trial court erred in sustaining the motion to dismiss of the third-party defendant-appellee, Jeffrey Heckman, because if the broker is entitled to recovery of a commission herein against the seller, which seller denies, the seller has a contractual right to recovery over against the buyer, in the amount of seller's damages, the real estate commission.

"3. In the alternative, the trial court erred in entering final judgment for the full amount of the commission against the seller, defendant and third-party plaintiff-appellant, Springtime Company, because if the broker is entitled to a commission herein, which the seller denies, and if the seller is not entitled to recover over against the buyer, which it claims, such commission is the joint obligation of the seller and the buyer and the seller is entitled to contribution from the buyer, third-party defendant-appellee, Jeffrey Heckman.

"4. The trial court erred in overruling appellant's motion in the trial court for dismissal of the plaintiff's claim due to the plaintiff's failure to assert its claim as a compulsory counterclaim in the previous litigation between the parties in the Common Pleas Court of Franklin County."

In support of defendant's first assignment of error, it argues that by the addition of the words "when and if property is closed and seller receives cash" the defendant changed the nature of the plaintiff's duties under the contract and imposed upon the broker the duty to not only secure a ready, willing and able purchaser, but a ready, willing and able purchaser at the time of closing, who would close without being forced to do so and who would pay the seller the cash called for by the agreement. Defendant asserts that, since the buyer closed the transaction only after being ordered to do so by the Franklin County Court of Common Pleas, pursuant to the defendant's suit in specific performance, the plaintiff failed in its obligation to procure a ready, willing and able purchaser at the time of closing and, thus, is not entitled to a broker's commission.

Fundamentally, a real estate broker earns his commission when he procures a buyer ready, willing and able to

purchase the subject property on the terms specified by the owner. See *Bauman* v. *Worley* (1957), 166 Ohio St. 471. The courts of Ohio have consistently held that a broker is entitled to his commission after the seller enters into an enforceable written contract with the buyer, even though the transaction is never consummated. The syllabus in *Lohr* v. *Ford* (1952), 94 Ohio App. 17, reads as follows:

"1. Where a real estate broker employed by a seller procures a purchaser who enters into an enforceable contract with the seller, such broker is entitled to his commission.

"2. Under such circumstances, the fact that the transaction failed of consummation for a reason unrelated to the binding quality of the contract does not affect the broker's right to his commission.

"3. In an action by such broker for recovery of his commission, whether the buyer was ready, willing and able to purchase the property is not a proper issue."

Note, also, *Carey, Admr.*, v. *Conn.* (1923), 107 Ohio St. 113; *Scudder* v. *Wallace* (1946), 79 Ohio App. 48; *Richards* v. *Glaser* (1946), 49 Ohio Law Abs. 457; and *Harden* v. *Bowling* (1971), 27 Ohio App. 2d 163.

Moreover, the foregoing rule, of course, may be varied by agreement of the parties. They may make payment of the commission dependent upon an agreement that no commission shall be paid unless the purchase price has been paid and the title transferred. *Hersh* v. *Kelman* (1951), 61 Ohio Law Abs. 363. In this case, the trial court found that the addition of the clause "when and if property is closed and seller receives cash" was ambiguous. In determining the meaning of an ambiguous clause, a reasonable meaning, governed by the intention of the parties in light of the particular facts and circumstances surrounding the making of the contract, must be given to the clause. We find that the trial court's construction of the clause, that the defendant agreed to pay the commission when ever the contract closed and the seller received sufficient cash from the buyer to pay the commission, is a reasonable interpretation.

It is reiterated that "a real estate broker is entitled to

a commission for his services under an employment contract when he produces a purchaser and the purchaser and seller enter into a written *enforceable* contract for sale." *A. A. Realty Co.* v. *Warner & Albright Town & Country, Inc.*, (1961), 115 Ohio App. 545. See *Rosenthal* v. *City Savings & Loan Co.* (1940), 31 Ohio Law Abs. 236; *Scudder* v. *Wallace* (1946), 79 Ohio App. 48; *Lohr* v. *Ford* (1952), 94 Ohio App. 17; *cf. Patton* v. *Alessi* (1931), 42 Ohio App. 91; *Pfanz* v. *Humberg* (1910), 82 Ohio St. 1. Also see *Lawler* v. *Armstrong* (1909), 53 Wash. 664, 102 Pac. 775; *Haynes* v. *John Davis & Co.* (1945), 22 Wash. 474, 156 P. 2d 659. In our case, the defendant, while not giving plaintiff an exclusive agency to sell its property, did tell plaintiff that it would pay a commission if the plaintiff found a purchaser. Therefore, plaintiff earned his commission when the defendant entered into an enforceable contract with the buyer, but the defendant's obligation to pay the commission was conditioned upon the actual closing of the deal and the transfer to him from the buyer of sufficient cash to pay the real estate commission. In other words, the risk of the buyer's default was placed upon the plaintiff. When the transaction was closed, and the defendant received cash, the condition was met. The defendant's duty to pay the commission was determined. Therefore, defendant's first assignment of error is not well taken and is overruled.

The second and third assignments of error involve defendant's right to sue the buyer, Jeffrey Heckman, for either all or part of the real estate commission. Thus, they are considered together. Defendant claims it has a right of action against the buyer for all of the commission or, in the alternative, a right of contribution from the buyer for one-half of the commission due on the following clause of the purchase contract:

"I hereby deposit with your firm $3,000.00 by check to be held in trust by you, until this proposition, or any modification thereof, is accepted and conditions fulfilled. If this proposition or any modification thereof is not accepted, you are to return to me the above named deposit. If I fail within reasonable time to fulfill my above named proposition,

or any modification thereof, after the same has been accepted, by both parties hereto, I agree to pay your firm your regular commission of 6%."

In defendant's second assignment of error, it argues that the buyer's promise to pay the commission if he failed to perform within a reasonable time runs directly to defendant, and since the buyer did not complete the transaction within a reasonable time, he is liable to the defendant for the full commission. In the third assignment of error, defendant contends that the buyer bound himself as a joint obligor with respect to paying the commission if he failed to perform within a reasonable time. Based upon this joint obligation, defendant asserts the right to receive contribution from the buyer in the amount of one-half of the commission owed. Such arguments are based upon the buyer's promise to pay the real estate commission if he failed to perform within a reasonable time.

Defendant's successful action in specific performance, however, relieved buyer of the obligation to pay the commission. A suit in specific performance connotes "performance specifically as agreed." The purpose of the remedy is to give the one who seeks it the benefit of his contract in specie by compelling the other party to the contract to do that which he has agreed to do; in the instant case, to purchase the land upon the terms as set out in the contract. Note, 71 American Jurisprudence 2d 10, Specific Performance, Section 1. When a party sues for specific performance, he, in substance, admits that the contract remains in effect and seeks performance. The trial court may award compensation for expenses suffered because of delay. Notwithstanding, compensation shall not be granted for an injury that an existing decree is designed to prevent. (Annotation 7 A. L. R. 2d 1204; Restatement, Contracts, Section 348[2].) Hence, by defendant's prevailing suit for specific performance, the buyer's alleged breach of contract was nullified. The contract cannot be both performed and breached. The contract, rather than the breach, is the basis for the specific performance remedy.

As an additional argument against the applicability of

the doctrine of election of remedies, defendant argues that it is a general principle of law that the doctrine is inapplicable where there are two distinct wrongful acts, or where the transaction gives rise to distinct and independent grounds of action which may be concurrently or consecutively pursued to satisfaction. While the foregoing proposition of law may be valid, it is not applicable to the factual situation in this case. Defendant asserts that the buyer, in the purchase contract, promised to purchase the property within sixty days and, in addition, to pay the real estate commission if he failed to perform within a reasonable time. While the contract could be construed to include two promises, both are based upon the same obligation: to purchase the property within a reasonable time, defined as sixty days. Therefore, we do not find that there were two distinct wrongful acts, but only one, that being buyer's failure to consummate, or purchase, the property within sixty days.

As an additional argument, defendant also contends that the doctrine of election of remedies is not applicable because the buyer failed to keep two promises in the purchase contract. Defendant also asserts that the buyer promised to purchase the property within sixty days, as well as pay the real estate commission if he failed, within a reasonable time, to perform. The contract could be construed to include two promises, but both are based upon the same obligation: to purchase the property within a reasonable time, defined as sixty days.

The syllabus of *Lee* v. *Thoma* (1913), 1 Ohio App. 384, reads as follows:

"An action for specific performance is a bar to a subsequent action for damages alleged to have been sustained through failure of the defendant to carry out the contract which forms the basis of the first suit."

Therefore, defendant's successful action in specific performance, in effect, nullified the buyer's alleged breach of contract—that being his failure to purchase the real estate within a reasonable time. Since the buyer's action to pay the broker's commission was based upon the same contract, or rooted in the same promise, the cure of defen-

dant's breach thereof relieved him of any liability to pay the commission. Consequently, the second and third assignments of error are overruled.

Finally, the fourth assignment of error is also overruled. One requirement of a compulsory counterclaim is that it exist at the time the pleading is served. Civ. R. 13(A) reads, in pertinent part:

"A pleading shall state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. * * *". (Emphasis added.)

Plaintiff earned its commission at the time an enforceable contract was executed; however, its right to receive the commission from defendant, and defendant's corresponding obligation to pay the commission, was contingent upon the actual closing, or consummation of the contract, and the receipt by defendant from the buyer of sufficient cash to pay the commission. This event had not occurred at the time the plaintiff served his answer on the defendant in defendant's specific performance suit. At any rate, defendant's failure to oppose plaintiff's motion for relief pursuant to Civ. R. 60, from the specific performance judgment, waived any rights which defendant had to raise the compulsory-counterclaim issue in the present ligitation. Consequently, the trial court did not err in overruling defendant's motion to dismiss the plaintiff's claim for failure to assert a compulsory counterclaim in the prior specific performance action.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P. J., concurs.
WHITESIDE, J., dissents.

WHITESIDE, J., dissenting. Being unable to agree with the majority, I must dissent. Much of the majority decision relates to the general rules of liability of a principal to a broker. Under the peculiar facts of this case, most of such authority has no application.

The first problem in this case concerns the question of upon whose behalf plaintiff was acting in connection with the purchase and sale of the subject property. The record is clear that plaintiff was not employed by Alumni Fund, Inc., the assignor of defendant Springtime Company, to sell the subject property. Rather, the record is clear that the president of Alumni Fund declined to list the property for sale with plaintiff as agent when approached and solicited to do so. He did, however, express a willingness to sell the property although declining to employ plaintiff for that purpose.

After this conversation with the president of Alumni Fund (also the president of Springtime Company), plaintiff's agent did approach the eventual purchaser of the property. Plaintiff's agent testified: "* * * I was in investment properties, so I did have people who were interested, you know, in investment properties." She further testified:

"I got in touch with Jeff Heckman and told him where the property was and the price, and we discussed the potential. And he said, 'Draw up an offer'."

This plaintiff's agent did. The offer, signed by Jeff Heckman, starts with the statement: "Through you as agents I hereby propose and agree to purchase the following described real estate * * *." The offer is not clear as to on whose behalf plaintiff acted as agent, the purchaser or the seller. Obviously, a broker may act as agent for the seller, the purchaser, or for both in a transaction. The record is clear, however, that Alumni Fund had not employed plaintiff as its agent to sell the property. However, Alumni Fund did accept the offer.

The offer contains the following provision with respect to the payment of a commission by the purchaser to the plaintiff:

"If I fail within reasonable time to fulfill my above named proposition, or any modification thereof, after the

same has been accepted, by both parties hereto, I agree to pay your firm your regular commission of 6%."

The acceptance of the offer duly executed by Alumni Fund constitutes the only possible basis for liability of Alumni Fund to pay a commission to plaintiff. The acceptance reads in its entirety as follows:

"I hereby accept and agree to the above proposition this 24th day of March, 1972, and also agree to pay your firm your regular commission, 6% for securing the herein purchaser for my property *when and if property is closed and seller receives cash.*" (Emphasis added.)

Under the peculiar facts of this case, there is no way that defendant Alumni Fund or its assignee Springtime Company could become liable to pay a commission to plaintiff solely upon the basis of the execution of an enforceable contract by the purchaser. Plaintiff essentially concedes this point in its brief. Plaintiff contends, however, that it is entitled to a commission from defendants by virtue of the fact that the transaction was eventually closed and defendants received sufficient cash from the purchaser to pay the commission albeit that an action in specific performance was necessary to be brought against the purchaser before the sale was consummated.

There can be no question that plaintiff was entitled to be paid its commission of 6% in connection with this transaction pursuant to the purchase agreement. The basic issue is whether, under the facts and circumstances of this case, plaintiff was entitled to recover the commission from the purchaser or from the seller. With regard to the purchaser's obligation to pay the commission, the trial court specifically found as follows:

"The contract further provided that buyer agreed to pay the real estate broker's commission if he failed to fulfill his obligation under the contract within a reasonable time.

"The buyer did fail to fulfill his obligations under the contract within a reasonable time. * * *"

As a conclusion of law, however, the trial court found that:

"Defendant Springtime Company by forcing defend-

ant-Heckman to specifically perform the contract, relieved defendant Heckman of his obligations to plaintiff. * * *"

The issues are complicated by the specific performance action. The record does indicate that plaintiff was joined as a party to such action. Since plaintiff was joined as a party in such specific performance action, it was required to plead its claim for the commission as a compulsory counterclaim pursuant to Civ. R. 13(A). The record indicates, however, that instead of pleading its claim for the commission as a compulsory counterclaim, at its request and by agreement of the parties, plaintiff was dismissed as a party to the specific performance action under a court order to deposit the $3,000 made with it by plaintiff with the clerk of courts. The original judgment entry in the specific performance action specifically stated: "It is further ordered that no commission be paid to Harley E. Rouda & Co. for the purchase of the property in question."

The record indicates, however, that subsequently plaintiff made a motion for relief from that order, pursuant to Civ. R. 60, which was sustained by the court in which the specific performance decree was entered. That court in its order stated, in pertinent part:

"The words 'it is further ordered that no commission be paid to Harley E. Rouda & Co. for the purchase of the property in question' are hereby stricken from the journal entry of August 25, 1972, *and the parties are left to pursue appropriate remedies based on the law and the facts surrounding this commission.*" (Emphasis added.)

The issue of failure to make a compulsory counterclaim should have been raised in connection with the specific performance action in opposition to plaintiff's motion for relief from judgment. Since it was not raised in connection therewith, it has been waived. Furthermore, the judgment entry granting plaintiff relief from judgment in the specific performance action specifically provides that the parties are free to litigate the issues concerning the payment of a commission to plaintiff by other appropriate action. That judgment is now binding on all the parties, including plaintiff, defendants Alumni Fund and Springtime Company, and third-party defendant Jeffrey Heckman, the purchaser

of the property. In other words, by virtue of the modification of the judgment entry upon plaintiff's motion for relief from judgment, none of the issues concerning payment of the broker commission have been resolved by the specific performance action. Accordingly, none of the parties hereto may rely upon the specific performance action as being dispositive of any issue concerning the broker commission.

Ordinarily, a broker, acting as agent for the seller, cannot recover a commission from a defaulting purchaser, although the seller may recover any commission he is required to pay to the broker from the purchaser as damages resulting from his default. *Olesick* v. *Myers* (1960), 113 Ohio App. 270. However, in this case there is some evidence that the broker acted as agent for the purchaser or as agent for both seller and purchaser, the broker not having been employed to sell the property by the seller. Under such circumstances, the broker may be entitled to recover his commission from a defaulting purchaser. Furthermore, the agreement itself expressly obligates the purchaser to the broker to pay the broker his commission if the purchaser fails to close within a reasonable time. As this court has previously held, such a provision of a purchase-sale agreement makes the purchaser liable to pay to the broker the full commission due the broker in the event that the purchaser fails to fulfill the agreement of purchase in accordance with its terms. See *C. V. Perry & Co.* v. *Kulow*, Tenth Appellate District No. 10006, April 20, 1971.

The trial court made an express factual finding that the purchaser, third-party defendant Heckman, breached the purchase agreement by failing to close within a reasonable time. Accordingly, under the terms of the agreement, by such failure to close within a reasonable time, the purchaser became liable to plaintiff for the broker commission. The trial court, however, further found, as a conclusion of law, that defendant Springtime Company relieved defendant Heckman of his obligation to plaintiff, by forcing Heckman to specifically perform the contract by the action in the Court of Common Pleas.

Such a finding cannot be made as a matter of law. Rath-

er, the Court of Common Pleas ordered Heckman to specifically perform the contract. Such an order would ordinarily require performance by the purchaser of all his obligations under the contract including the obligation to pay the commission to the broker upon his failure to close within a reasonable time. In this case, a recovery of the broker commission from the purchaser was not a matter of damages flowing from his breach of the purchase agreement, but was a matter specified and fixed by the agreement itself—the agreement imposing an obligation upon the purchaser to pay the commission when he failed to close within a reasonable time. As indicated above, however, the Court of Common Pleas, in the modified decree, specifically left the matter of the payment of the commission to be resolved by further action between the parties.

By virtue of the terms of the agreement, plaintiff was entitled to a commission, to be paid by the seller when and if the transaction was closed in accordance with its terms and the seller received cash, or to be paid by the purchaser if the purchaser failed within a reasonable time to fulfill his obligations under the agreement. As to the time of closing, the agreement specifically provided that the sale would be closed within 30 days after acceptance or as soon thereafter as possible, but stated further that "under no circumstances shall this closing be delayed beyond an additional 30 days without the written consent of buyer and seller." There is no evidence of written consent of the seller to a delay in the closing; rather, the seller brought an action in specific performance to compel fulfillment by the purchaser of his obligations. Accordingly, by the very terms of the agreement itself, the obligation to pay the commission shifted from the seller to the purchaser upon the purchaser's failure to fulfill his obligations under the agreement within a reasonable time. There is no evidence of a waiver by defendants of this obligation of the third-party defendant, nor was waiver pleaded by the third-party defendant as an affirmative defense as required by Civ. R. 8(C).

Furthermore, there was no closing of the agreement within the contemplation of the agreement itself. The only

"closing" that took place was pursuant to a specific performance order of the Common Pleas Court, enforcing the agreement. The agreement contemplated a closing which would be held no later than 60 days after acceptance unless the seller consented in writing to an additional delay. There is no evidence of any such written consent by the seller. The agreement herein was in essence a three-party agreement with the broker being a party thereto. The agreement must be read as an entirety and one provision thereof read in conjunction with other provisions. The agreement of the seller to pay the broker a commission "when and if property is closed" must be read in connection with the provision of the agreement for closing as set forth above. As to the further condition that the seller would be obligated to pay plaintiff a commission only when the seller receives cash, again reference must be made to the entire agreement. The agreement does contain an express provision for the complicated financing whereby the seller agreed to loan the purchaser an amount in excess of the purchase price. However, immediately preceding the financial arrangements, there appears the statement: "Buyer to pay seller cash upon transfer of general warranty deed." The evidence also indicates that the seller has received cash from the purchaser in excess of the amount of the commission. The agreement, read together as an entirety, does not justify defendants' contention that the payment of the commission to plaintiff must await repayment of the loan that seller made to purchaser as part of the agreement. Although as a practical matter, the transaction may not have occurred in this fashion, the agreement contemplated that seller would lend the purchaser $127,000, $70,-000 of which purchaser would use to "pay seller cash upon transfer of general warranty deed." As a practical matter, this exchange of cash did not occur, but, instead, the amount of the loan was increased by the purchase price, the purchaser receiving only the balance as a loan.

Unfortunately, none of the reported cases involving broker commissions cited by the parties, or located by the court, involve a transaction similar to the one herein in-

volved. This case must be determined upon its own peculiar facts, which present an issue of first impression, despite the multitude of litigation concerning broker commissions. Unfortunately, the broker commission issue was not litigated in the specific performance action where it should have been. As indicated above, with respect to that action, the modified decree left the issue of commission to be resolved by further litigation between the parties. This case constitutes that litigation.

Neither the agreement nor the evidence is completely clear as to whether plaintiff acted solely as agent of the purchasers in connection with this transaction or acted as agent for both the seller and the purchaser. Before a proper determination of who is liable to pay the commission due plaintiff can be made, it is necessary to resolve this factual issue. If plaintiff acted as agent for both seller and purchaser in connection with the transaction, they may well be jointly liable to share in the commission as contended, in the alternative, by the third assignment of error. In any event, it is clear that plaintiff is entitled to a single commission, to be paid either by defendant or by the third-party defendant, or to be shared by them. It is my conclusion that the trial court erred in dismissing the third-party defendant and in finding defendant liable for the commission as a matter of law.

Accordingly, I would sustain the first three assignments of error, but would overrule the fourth assignment of error, and would reverse the judgment of the Municipal Court, and remand the cause to that court for further proceedings, in accordance with law.